IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERTRAM EMEKEKWUE,** | : | **CIVIL NO. 1:11-CV-01747** |
| **Plaintiff** | : | |
| **v.** | : | |
| **CHINWE OFFOR,** | : | **Judge Sylvia H. Rambo** |
| **Defendant** | : | |

## M E M O R A N D U M

Before the court is Defendant's amended motion to dismiss Plaintiff's claims for libel, intentional infliction of emotional distress, negligent infliction of emotional distress, and punitive damages, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 12.)  The parties have briefed the issues, and the matter is ripe for disposition.  For the reasons stated below, the motion will be granted in part and denied in part.

## I.      Background

### A.      Facts[1]

Invoking the court's diversity jurisdiction,[2] Plaintiff, Bertram Emekekwue, brought this action as a result of comments made by Defendant,

---

[1] As required when ruling on a motion to dismiss, the court accepts as true all well-pleaded factual allegations in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[2] Plaintiff is a resident of Pennsylvania (Compl. ¶ 4) and Defendant is a resident of New York (*Id.* ¶ 5).  The amount in controversy exceeds $75,000.00.  (*Id.* ¶ 1.)

Chinwe Offor, in an e-mail dated July 19, 2011. (Doc. 8, Compl. ¶ 6.)  The e-mail

regarded the Obosi Community Association of New York Inc.'s ("OCA")[3]

consideration of Plaintiff's application for financial benefits following the death of

Plaintiff's ex-wife, Vanessa Emekekwue.  (*Id.* ¶ 7; Def.'s Amended Mot. to Dismiss,

Doc. 12 at ¶ 5.)  Plaintiff alleges that the e-mail recipients included OCA members

and various other members of the public located in Pennsylvania and elsewhere.

(Compl. ¶ 10.)

       In the first four paragraphs of the e-mail, Defendant argues against the

payment of death benefits to Bertram and Vanessa Emekekwue's children.  (*See*

Doc. 8-1.)  The arguments were based on Defendant's interpretation of the OCA

constitution.  In the final paragraph of the e-mail, Defendant goes on to state:

> In conclusion, let's call a spade a spade. Mr. Bertram
> Emekekwue took away Vanessa's medical insurance
> which would have enabled her to continue her
> medical treatment at Johns Hopkins University
> where they were familiar with her cancer. She had
> no choice but to go to the State hospital in
> Pennsylvania. He was very proud of this and had no
> problems informing all and sundry how she would
> soon die. It's pathetic that he wants to gain

---

[3]  According to the OCA website, the "[OCA] was established in 1994 for the purpose of providing educational opportunities to boys and girls of Obosi, as well as improving the standard of living at Obosi. OCA's sources of funds are donations from individuals and corporations. OCA is a charitable organization with IRS tax exempt status. Its' membership covers New York, New Jersey, Connecticut and Pennsylvania areas."  Obosi Community Association of New York Area, Inc., http://obosinynj.org/ (last visited Apr. 17, 2012).

> financially from her death. Please stop begging OCA
> and ODA to pay you for your ex-wife's death.
> ENOUGH ALREADY.

(Doc. 8-1.)

Although not specifically identified in the amended complaint, it appears that this is the primary paragraph to which Plaintiff objects. Plaintiff argues that the e-mail contains malicious, false statements that harmed his reputation, mental and physical health, and economic status. (Compl. ¶¶ 13, 31.) Plaintiff specifically contends that Defendant's false statements led readers to believe that he was the cause of his ex-wife's death and that Plaintiff attempted to extort money from OCA. (*Id*. ¶ 7.) Plaintiff also argues that Defendant's statements would falsely lead a reader to believe that Plaintiff bragged about his ex-wife's death. (Doc. 14 at 3.) Plaintiff further claims that the e-mail has caused him and his immediate family to seek counseling. (Compl. ¶ 32.)

## B.   Procedural History

Plaintiff filed an initial complaint with this court on September 20, 2011. (Doc. 1.) On December 7, 2011, Defendant filed a motion to dismiss (Doc. 5) along with a brief in support, (Doc. 6). Plaintiff filed an amended complaint on December 16, 2011. (Doc. 8.) On December 31, 2011, Defendant re-filed an

amended motion to dismiss the amended complaint.[4]  (Doc. 12.)  Defendant filed a

brief in support of the amended motion to dismiss on January 3, 2012.  (Doc. 13.)

On January 25, 2012, Plaintiff filed a brief in opposition.  (Doc. 14.)  Defendant has

not filed a reply brief, and the time to do so has now expired.  Accordingly, the

motion is now ripe for disposition.


**II.**          <u>**Legal Standard**</u>

When presented with a motion to dismiss for failure to state a claim, the

court "must accept all of the complaint's well-pleaded facts as true, but may

disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d

Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint

are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211

(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint must do more

than allege the plaintiff's entitlement to relief; it must "show such an entitlement

with its facts."  *Fowler,* 578 F.3d at 211 (citations omitted).  As the Supreme Court

instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer

---

[4] Defendant's initial motion to dismiss, and the memorandum in support thereof, contained arguments for dismissal based on lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Docs. 5 & 6). Defendant's amended motion to dismiss did not re-raise the Rule 12(b)(2) personal jurisdiction arguments.  (Docs. 12 & 13.)  Because the initial motion to dismiss is considered moot, the court will only address the arguments presented in the amended motion to dismiss.

more than the mere possibility of misconduct, the complaint has alleged—but it has

not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a) (alterations in original).)  In other words, a claim has

"facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements do not suffice." *Id.*

   "To decide a motion to dismiss, courts generally consider only the

allegations contained in the complaint, exhibits attached to the complaint and matters

of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998

F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*,

502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic

document[s] that a defendant attaches as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998

F.2d at 1196.  Additionally, "documents whose contents are alleged in the complaint

and whose authenticity no party questions, but which are not physically attached to

the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d

548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v.*

5

*Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.**        **Discussion**

Defendant has moved to dismiss each of Plaintiff's substantive claims, which include state law claims for libel, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and punitive damages. Defendant also moves to dismiss Plaintiff's requests for specific damages and attorneys' fees.  The court will address each claim in turn.[5]

---

        [5]  As a Federal Court exercising diversity jurisdiction, we are obligated to apply the substantive law of Pennsylvania to this dispute.  *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000).

## A. **Libel**

Plaintiff argues that the false statements contained in Defendant's e-mail harmed his reputation and caused him personal, financial, physical, economic, mental, and emotional harm. (Compl. ¶¶ 7, 8, 13, 31.) Specifically, Plaintiff argues that Defendant knowingly and maliciously made false statements which would lead a reader to believe that Plaintiff was the cause of his ex-wife's death, that Plaintiff bragged that he helped facilitate his ex-wife's death, and that Plaintiff attempted to extort money from the OCA. (Compl. ¶ 7; Doc. 14 at 7.)

Defendant argues for dismissal of Plaintiff's libel claim on three grounds. Defendant first argues that Plaintiff's failure to specify which portions of the e-mail are defamatory is fatal to Plaintiff's claim. (Doc. 13 at 4.) Second, Defendant argues that the court, as a matter of law, cannot find the e-mail capable of a defamatory meaning. (*Id.*) Lastly, Defendant argues that even if the court finds the statements to be defamatory, the statements were protected by privilege. (*Id.* at 6, 7.) For the reasons that follow, each of these arguments is rejected.

Under article I, section 1 of the Pennsylvania Constitution, a person's interest in their reputation has been afforded the same level of protection as their life, liberty and property. Pa. Const. art. 1, § 1; *see Sprague v. Walter*, 543 A.2d 1078, 1084 (Pa. 1988). Furthermore, article I, section 11 declares that, "Every man for an

injury done to him in his lands, goods, person or reputation shall have remedy by due course of law."   Pa. Const. art. 1, § 11.   The remedy provided under Pennsylvania substantive law is an action in tort for defamation.   *Sprague*, 543 A.2d at 1084.

"Defamation, of which libel, slander, and invasion of privacy are methods, is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements."[6]  *Joseph v. Scranton Times L.P.,* 959 A.2d 322, 334 (Pa. Super. Ct. 2008) (citing *Zartman v. Lehigh Cnty. Humane Soc.*, 482 A.2d 266, 268 (Pa. Super. Ct. 1984)).   An action for defamation serves three functions: 1) giving the injured party a public vindication of their good name; 2) providing compensation to the plaintiff for injury to their reputation, for pecuniary loss and for emotional distress; and 3) punishing the defendant in order to deter the defendant and others from publishing defamatory statements in the future.  *See Gaetano v. Sharon Herald Co.*, 231 A.2d 753, 755 (Pa. 1967); *see also Moyer v. Phillips,* 341 A.2d 441, 444 (Pa. 1975).

The Pennsylvania legislature has codified the elements necessary to prove a defamation claim at 42 Pa. Cons. Stat. § 8343.   In an action for defamation, the plaintiff has the burden of proving: 1) the defamatory character of the

---

[6]  Libel, the type of defamation at issue here, is defined in Black's Law Dictionary as "[a] defamatory statement expressed in a fixed medium, esp[ecially] writing but also a picture, sign or electronic broadcast."  Black's Law Dictionary 998 (9th ed. 2009).

communication, 2) its publication by the defendant, 3) its application to the plaintiff, 4) the understanding by the recipient of its defamatory meaning, 5) the understanding by the recipient of it as intended to be applied to the plaintiff, 6) special harm resulting to the plaintiff from its publication, and 7) abuse of a conditionally privileged occasion.  42 Pa. Cons. Stat. § 8343(a).

As a threshold inquiry, and as a question of law, the court must first determine whether the communication was capable of a defamatory meaning. *Tucker v. Phila. Daily News*, 848 A.2d 113, 123-124 (Pa. 2004); *accord Bakare v. Pinnacle Health Hosp., Inc.*, 469 F. Supp. 2d 272, 298 (M.D. Pa. 2006).  To determine whether a statement is capable of a defamatory meaning, the court must consider whether the statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third parties from associating or dealing with him." *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001); *accord Tucker*, 848 A.2d at 124.

In making this determination, the court must construe the statement in light of the whole factual context in which it appears, "and each word must be read in the context of all the other words." *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. Ct. 2010); *see also Tucker*, 848 A.2d at 124.  In deciding whether the

statement can fairly and reasonably be construed to have the libelous meaning

ascribed to it, Pennsylvania courts have applied the following test:

> The test is the effect the article is fairly calculated
> to produce, the impression it would naturally
> engender, in the minds of the average person
> among whom it is intended to circulate. The words
> must be given by judges and juries the same
> signification that other people are likely to attribute
> to them.

*Kurowski*, 994 A.2d at 617 (citations omitted).  Further, "[i]t is not enough that the

victim of the [statements] be embarrassed or annoyed, he must have suffered the kind

of harm which has grievously fractured his standing in the community of respectable

society."  *Tucker*, 848 A.2d at 124 (quoting *Scott-Taylor, Inc. v. Stokes,* 229 A.2d

733, 734 (Pa. 1967)).

    Defendant's first argument, that Plaintiff's libel claim must be

dismissed because Plaintiff has not identified any specific challenged statement,

fails.  The complaint alleges that readers of the e-mail drew negative inferences from

certain language contained in the e-mail and from the e-mail as a whole. For

instance, paragraph seven of the complaint cites language from the e-mail in which

Defendant asked the readers of the e-mail to call "a spade a spade."  (Doc. 8 ¶ 7.)

Plaintiff alleges that this specific language carried defamatory meaning when read in

context with the remainder of the email.  The court is satisfied that Plaintiff, by

10

identifying the allegedly libelous e-mail and referring to specific statements therein, has sufficiently identified the allegedly libelous language, and therefore dismissal is not warranted on this ground.

Defendant's second argument, that Plaintiff's libel claim must be dismissed because the e-mail is not capable of a defamatory meaning, also fails. Plaintiff has pleaded sufficient facts to support the inference that the e-mail was capable of a defamatory meaning.  For example, Plaintiff has alleged that Defendant's e-mail was disseminated to members and non-members of OCA, both in Pennsylvania and elsewhere.  (*Id.* ¶¶ 10, 11.)  Plaintiff has further alleged that Defendant's false statements led readers to believe that Plaintiff contributed to his wife's death, bragged about it, and attempted to gain financially from it.  (*Id.* ¶ 7; Doc. 14, at 7.)  These allegations, taken as true, could lead to the reasonable inference in the minds of the average person that Plaintiff contributed to and benefitted from his wife's death.  Such inferences could harm the reputation of Plaintiff so as to lower him in the estimation of the community or deter third parties from associating or dealing with him.  Thus, Plaintiff's claim that the e-mail was capable of a defamatory meaning is facially plausible, and the court will not dismiss the libel claim on this ground.

Likewise, Defendant's third argument, that Plaintiff's libel claim must be dismissed based upon the privileged nature of the e-mail, fails.  A conditional privilege arises in a defamation action "when the communication involves an interest of the publisher, the recipient, a third-party, or the public." *Simms v. Exeter Architectural Prods., Inc.,* 916 F. Supp. 432, 436 (M.D. Pa. 1996).  "Such a privilege attaches when the statement is made on a proper occasion, in a proper manner, for a legitimate reason of the speaker, and is based on reasonable cause." *Bakare*, 469 F. Supp. 2d at 298.   However, this conditional privilege is forfeited "if the plaintiff demonstrates that the defendant abused the privilege by communicating in a reckless or negligent manner or by exceeding the necessary scope of the communication." *Id.*

At this point, it would be premature to dismiss the libel claim based on the defense of privilege.  Defendant argues that the defamation claim should be dismissed because of the privileged nature of the statement, specifically because (1) the statement was made during a conditionally privileged occasion (i.e. the internal deliberations of the OCA concerning Plaintiff's applications for financial benefits) and (2) the statement was published in the protection of the public interest (i.e. the public interest of protecting OCA funds, or the greater public interest of protecting tax-exempt organizations).  (Doc. 13 at 7-8.)

Plaintiff argues in his opposition brief that Defendant was not required to send a response to the OCA executive board, and that in the alternative "Defendant's e-mail went beyond the scope of responding to Plaintiff's application but went into the realm of defaming him." (Doc. 14 at 8.) Plaintiff further argues that even if the situation gave rise to a conditional privilege, Defendant forfeited the privilege through her malicious or negligent actions. (*Id.* at 9.) Plaintiff's assertions, when taken as true, could lead to the conclusion that either Defendant's asserted conditional privilege does not apply here because Defendant did not have reasonable cause to publish the statements in the e-mail, or that the privilege has been forfeited through abuse. Discovery is likely necessary to resolve these issues. Defendant's second privilege argument, that the statement was made in the public interest, leaves questions regarding Defendant's intent. Such issues are likewise not proper for dismissal at this stage of the litigation. Thus, the claim will not be dismissed based on either of the privilege defenses asserted.

## B. Intentional Infliction of Emotional Distress

The Pennsylvania Supreme Court has never formally recognized the tort of intentional infliction of emotional distress ("IIED"). *See, e.g., Taylor v. Albert Einstein Med. Ctr.,* 754 A.2d 650, 652 (Pa. 2000). However, Pennsylvania

courts typically refer to the Restatement (Second) of Torts § 46 as establishing the minimum requirements for an IIED claim. *See id.* Section 46 provides, in part: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Restatement (Second) of Torts § 46 (1977). Thus, an action for IIED requires that: (1) the conduct be extreme and outrageous; (2) the conduct be intentional or reckless; (3) the conduct causes severe emotional distress; and (4) the distress be severe. *Brownstein v. Gieda*, 649 F. Supp. 2d 368, 374 (M.D. Pa. 2009) (citing *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997.))

Pennsylvania has taken a strict approach to IIED claims. At the pleading stage, the court must "decide as an initial matter whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute 'outrageousness' as a matter of law." *Brownstein*, 649 F. Supp. 2d at 374 (citing *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 427 (E.D. Pa. 2000)). As a matter of law, outrageousness occurs only when "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'outrageous.'" *Id.* In order for a finding

14

of outrageousness to occur, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Hoy v. Angelone,* 720 A.2d 745, 754 (Pa. 1998).  Described another way, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1183 (Pa. Super. Ct. 1989) (quoting Restatement (Second) of Torts § 46 cmt. d (1977)).  Rather, only the most egregious and outrageous conduct has been found to constitute a sufficient basis for IIED claims.  *Id.*[7]

In the case *sub judice*, Plaintiff has failed to plead sufficient facts to support a cause of action for IIED.  Plaintiff's cause of action is based on the alleged emotional distress suffered from the dissemination of an e-mail to members and non-

---

[7]  For example, Pennsylvania courts have found the following as sufficient bases for IIED claims: (1) burying a body in a field after striking and killing the victim and failing to notify authorities or to seek medical assistance, (2) intentionally fabricating records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide, and (3) a team physician releasing medical information to the press that a player was suffering from a fatal disease when he knew the information was false.  *Hoy,* 720 A.2d at 754 (citing *Papieves v. Lawrence,* 263 A.2d 118 (Pa. 1970); *Banyas v. Lower Bucks Hosp.,* 437 A.2d 1236 (Pa. Super. Ct. 1981); *Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)).

members of the OCA community.  Plaintiff further contends that the emotional

distress caused by the dissemination of the e-mail was severe and that the distress

caused Plaintiff to seek counseling.  After a careful review of the contents of the e-

mail and the factual scenarios under which plaintiffs have been allowed to recover

for IIED in Pennsylvania, the court finds that Plaintiff has not pleaded sufficient

facts to give rise to an inference that Defendant's conduct rose to such an extreme

level of outrageousness that it would meet the requisite behavioral threshold for an

IIED claim under Pennsylvania law.  Defendant's action of disseminating the e-mail,

even if done with the alleged intent to harm the plaintiff, was not an action which the

average person would find so extreme in degree and outrageous in character as to go

beyond all possible bounds of decency.  Nor would the average person find the

contents of the e-mail to be atrocious and utterly intolerable in a civilized society.

Because the court does not find the e-mail to be "outrageous" as a matter of law, the

IIED claim is dismissed.

### C.  Negligent Infliction of Emotional Distress

The Pennsylvania Supreme Court recently reviewed the state of the law

concerning negligent infliction of emotional distress ("NIED") claims.  *See Toney v.*

*Chester Cnty. Hosp.,* 36 A.3d 83 (Pa. 2011).  The court in *Toney* explained that

Pennsylvania has developed three traditional theories for recovery in cases alleging NIED: (1) the impact rule, (2) the "zone of danger" rule, and (3) bystander liability. *Id.* at 88-89.  In the beginning, Pennsylvania utilized the impact rule, which "'barred recovery for fright, nervous shock or mental or emotional distress unless it was accompanied by a physical injury or impact upon the complaining party.'" *Id.* at 88 (quoting *Kazatsky v. King David Mem'l Park, Inc.,* 527 A.2d 998, 992 (Pa. 1987)). Next, Pennsylvania adopted the "zone of danger" theory of NIED liability, "which provided compensation to those who did not actually suffer a physical impact resulting in emotional distress so long as they were in personal danger of the physical impact." *Id.*  Most recently the Pennsylvania Supreme Court adopted the theory of bystander liability.  "The adoption of the bystander liability theory of NIED allow[s] recovery for emotional distress for plaintiffs who witness[] an accident causing serious injury to a close family member, even if the plaintiff [is] not within the zone of danger of physical impact." *Id.* at 89.

Furthermore, in *Toney*, the Pennsylvania Supreme Court adopted a fourth variation of NIED.  The court extended NIED liability to a specific subset of cases in which a pre-existing fiduciary or contractual relationship existed between the plaintiff and the defendant. *Id.* at 94-95.  The court explained that "if an actor

has a particular contractual or fiduciary relationship with a victim and it is foreseeable that the actor's carelessness could cause severe emotional harm to the victim, and that harm occurs, a cognizable tort arises which is, in short-form, referred to as breach of a 'contractual or fiduciary duty' not to inflict foreseeable emotional distress upon a victim." *Id.* at 85, n.1.

The complaint fails to plead facts sufficient to support an inference that Plaintiff will be able to prove a set of facts that will support any of the four variations of NIED claims.  The first three theories - the impact rule, the "zone of danger" rule, and the theory of bystander liability - involve an actual or threatened physical impact or injury to the plaintiff or a close family member.  Plaintiff here does not allege that any physical impact or threat of physical impact ever occurred either to Plaintiff or a close family member.  The fourth variation requires a special relationship to exist between the plaintiff and the defendant.  Here, although Defendant and Plaintiff were members of the same organization, this association did not create a contractual or fiduciary relationship or otherwise put Defendant in a position where she owed Plaintiff a special duty of care.  Accordingly, the NIED claim must be dismissed.

### D. <u>Punitive Damages</u>

Plaintiff has included punitive damages both as an independent claim and in his prayer for relief. Punitive damages are a theory of damages rather than an independent cause of action. *See Hutchinson v. Luddy*, 870 A.2d 766, 772 (Pa. 2005); *see also Kirkbride v. Lisbon Contractors, Inc.,* 555 A.2d 800, 802 (Pa. 1989). Thus, Plaintiff's claim for punitive damages will be treated as a theory of damages rather than as an independent cause of action. Accordingly, Plaintiff's independent claim for punitive damages will be dismissed. However, this dismissal will not affect Plaintiff's request for punitive damages with regards to the surviving libel claim.

### E. Damages

Defendant has moved to dismiss Plaintiff's claim for $2,000,000 in damages for violating Rule 8.1 of the Local Rules of Civil Procedure for the Middle District of Pennsylvania.[8] (Doc. 13 at 8.)

Local Rule 8.1 states:

> The demand for judgment required in any pleading
> in any civil action pursuant to Fed.R.Civ.P. 8(a)(3)
> may set forth generally that the party claiming
> damages is entitled to monetary relief but shall not
> claim any specific sum where unliquidated

---

[8] Plaintiff did not respond to Defendant's arguments to dismiss the specific request for $2,000,000 dollars in damages or attorneys' fees.

> damages are involved. The short plain statement of
> jurisdiction, required by Fed.R.Civ.P.8(a)(1), shall
> set forth any amounts needed to invoke the
> jurisdiction of the court but no other.

L.R. 8.1.  Here, Plaintiff has made a specific request for $2,000,000 of unliquidated

damages in his prayer for relief.  (Compl., Ad Damnum clause).  Since the request

for a specific amount of unliquidated damages is in direct violation of Local Rule

8.1, that specific dollar claim will be stricken from the complaint without prejudice

to the Plaintiff arguing in any subsequent proceedings for any appropriate damages

supported by the evidence.  *See Ball v. Beckley*, 2012 WL 175158, at *1 (M.D. Pa.

January 20, 2012).

Defendant also moves to dismiss Plaintiff's request for attorneys' fees.

It is well-settled that Pennsylvania adheres to the American Rule for the recovery of

attorneys' fees from an adverse party.  *Mosaica Acad. Charter Sch. v. Pa. Dep't of

Educ.,* 813 A.2d 813, 822 (Pa. 2002).   The American Rule states that a litigant is

responsible for their own litigation costs and "cannot recover counsel fees from an

adverse party unless there is express statutory authorization, a clear agreement of the

parties or some other established exception."  *Id.*

Here, Plaintiff neither pleads, nor argues in the brief in opposition, the

existence of any express statutory authorization, an agreement of the parties, or some

other established exception that would permit an award of attorneys' fees.   Nor is the

court independently aware of any basis, statutory or otherwise, for an award of

attorneys' fees for common law tort actions.   Thus, Plaintiff's request for attorneys'

fees will be dismissed.

**IV.**        <u>**Conclusion**</u>

In accordance with the foregoing discussion, Defendant's motion to dismiss will be granted in part and denied in part.  The motion will be granted as to Plaintiff's claims for IIED, NIED, and punitive damages.  Defendant's motion to dismiss Plaintiff's libel claim will be denied.  Despite the fact that Plaintiff's independent claim for punitive damages is dismissed, Plaintiff may seek punitive damages as an element of damages with respect to the libel claim.  Further, the motion to dismiss is granted as to Plaintiff's specific request for $2,000,000 in damages pursuant to Local Rule 8.1, as well as Plaintiff's request for attorneys' fees.  An appropriate order will issue.

   s/Sylvia H. Rambo
   United States District Judge

Dated:  May 15, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERTRAM EMEKEKWUE,** | : | **CIVIL NO. 1:11-CV-01747** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHINWE OFFOR,** | : | **Judge Sylvia H. Rambo** |
| **Defendant** | : | |
| | : | |

**O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant's amended motion to dismiss (Doc. 12) is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** with regard to Plaintiff's claims for intentional infliction of emotional distress, negligent infliction of emotional distress, request for punitive damages, specific request for $2,000,000 in damages, and request for attorneys' fees. The motion is **DENIED** with regard to Plaintiff's claim for libel. Defendant's original motion to dismiss (Doc. 5) is dismissed as **MOOT**.

               s/Sylvia H. Rambo
               United States District Judge

Dated: May 15, 2012.